No. 87,966

In the Matter of STAN R. SINGLETON, *Respondent.*

111 P.3d 630

On March 8, 2002, this court in *In re Singleton,* 273 Kan. 171, 41 P.3d 836 (2002), placed the respondent on a 2-year probation with specific conditions of supervision and named N. Trip Shawver to supervise respondent during said probation.

On January 4, 2005, Frank D. Diehl, deputy disciplinary administrator, filed a motion to revoke the probation of the respondent following an expedited hearing as provided by Supreme Court Rule 211(g)(10) (2004 Kan. Ct. R. Annot. 275). The office of the Disciplinary Administrator alleged facts showing that respondent has violated KRPC 3.2 (2004 Kan. Ct. R. Annot. 440), 3.3 (2004 Kan. Ct. R. Annot. 444), 3.4 (2004 Kan. Ct. R. Annot. 449), and 8.4 (2004 Kan. Ct. R. Annot. 485), all in violation of the terms and conditions of respondent's probation. Pursuant to Supreme Court Rule 211(g)(10), M. Kathleen Babcock, chairperson of the Kansas Board for Discipline of Attorneys, appointed Jack Scott McInteer, Board member, to conduct an expedited hearing.

Board member McInteer conducted an expedited hearing on January 25, 2005, at the Sedgwick County Courthouse, Wichita, Kansas. Respondent appeared in person, pro se. The office of the Disciplinary Administrator appeared by and through Frank D. Diehl, Deputy Disciplinary Administrator.

The expedited hearing report of Board member McInteer makes the following findings of fact, conclusions of law, and recommendation to this court:

### "FINDINGS OF FACT

. . . .

"2.   On March 8, 2002, the Kansas Supreme Court suspended the imposition of discipline and placed the Respondent on probation for twenty-four months, subject to the following terms and conditions:

. . . .

"4.   *Additional Violations.* The Respondent shall not violate the terms of his probation or the provisions of the Kansas Rules of Professional Conduct. In the

event that the Respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the Respondent shall immediately report such violation to the Disciplinary Administrator. The Disciplinary Administrator shall take immediate action directing the Respondent to show cause why the probation should not be revoked.'

. . . .

"3.    The Respondent suffers from serious medical problems. The Respondent's medical problems are ongoing.

"4.    The Respondent represented the City of Park City, Kansas, in *City of Park City vs. City of Valley Center*, Sedgwick County District Court case number 2003CV4038. Barry Arbuckle represented the City of Valley Center. Robert C. Brown represented a group of approximately 100 homeowners referred to as the 'Intervenors.'

"5.    The Respondent failed to appear in Court on a number of occasions for hearings on motions in the *City of Park City vs. City of Valley Center* case.

"6.    The Respondent failed on behalf of the City of Park City to comply with discovery requests in the *City of Park City vs. City of Valley Center* case.

"7.    Counsel for the City of Valley Center filed a Motion to Compel Discovery. The motion was scheduled to be heard on August 5, 2004. On August 5, 2004, the Respondent failed to appear at the scheduled hearing as ordered. Prior to the hearing, the Respondent informed opposing counsel that he would not be appearing due to health problems. The Respondent promised opposing counsel he would comply with the discovery request by August 9, 2004. The morning of the hearing, the Respondent contacted Judge Friedel on an unrelated matter and told him that he was ill and could not appear on the unrelated matter. He did not contact Judge Roth who was assigned to hear this matter and did not appear as previously ordered.

"8.    Following the hearing on the Motion to Compel, Judge Roth granted the motion. Judge Roth entered an order compelling the Respondent to provide the discovery by August 9, 2004, at 5:00 p.m. Judge Roth set a hearing for August 18, 2004, to determine whether sanctions should be entered against the Respondent.

"9.    The Respondent failed to provide the discovery as ordered by August 9, 2004, at 5:00 p.m.

"10.   On August 10, 2004, Park City held a city commission meeting. During an executive session, the city commission determined it should cause the suit to be dismissed and so directed the Respondent. The City also decided to seek the consent annexation of an adjacent parcel which was planned to be an airport and believed dismissal of the suit would facilitate that annexation.

"11.   On August 11, 2004, the Respondent directed his secretary, Judy Morris, to prepare a Journal Entry of Dismissal Without Prejudice. Ms. Morris asked the Respondent whether she should include signature lines for the other attorneys involved in the case. The Respondent instructed Ms. Morris to include a signature line only for the Respondent and to not include signature lines for the other

attorneys involved in the case. The Respondent signed the only approval block [of] the Journal Entry of Dismissal Without Prejudice.

"12.   That afternoon, Ms. Morris took the Journal Entry of Dismissal Without Prejudice to the Sedgwick County Courthouse. Ms. Morris went to Judge Friedel's chambers. However, Judge Friedel was not available to review and sign the Journal Entry.

"13.   Ms. Morris then took the order to Judge William S. Woolley's chambers. Judge Woolley was available. Ms. Morris presented the order as an 'agreed to' order. Judge Woolley signed the Journal Entry of Dismissal Without Prejudice. The evidence was in dispute as to whether Ms. Morris stated that the order was agreed; however, presentation of the order in the manner presented under the specific direction of the Respondent constitutes a representation by the Respondent that the order was agreed. The order was filed with the Clerk of the District Court at 1:51 p.m. on August 11, 2004.

"14.   The Journal Entry of Dismissal Without Prejudice was not an 'agreed to' order. Sometime on August 11, 2004, the Respondent discussed the order with Mr. Brown. Mr. Brown indicated that with some reservations, he believed an order would be acceptable; however, he would need to discuss it with his clients.

"15.   Prior to presentation of the order to Judge Woolley, the Respondent had not discussed the order with Mr. Arbuckle. At 2:22 p.m. on August 11, 2004, the Respondent left a message for Mr. Arbuckle. This was Respondent's attempt to contact Mr. Arbuckle to obtain agreement for the order and occurred after the order had been filed. Mr. Arbuckle returned the telephone call on August 12, 2004. At that time, Mr. Arbuckle told the Respondent that he would discuss the matter with his client and let him know their position regarding a possible dismissal. The Respondent did not tell Mr. Arbuckle that he had already filed the order.

"16.   On August 13, 2004, Mr. Brown contacted the Clerk of the Court about this suit for other reasons and was informed that the Respondent had already sought and obtained a dismissal. This was Mr. Brown's first knowledge of the dismissal.

"17.   Prior to the hearing scheduled for August 18, 2004, Judge Roth learned that the Respondent sought and obtained an order dismissing the action.

"18.   On September 2, 2004, Mr. Arbuckle filed an objection to the Journal Entry of Dismissal Without Prejudice. Judge David Kennedy reinstated the case on September 10, 2004, after learning that the Respondent sought and obtained a Journal Entry of Dismissal Without Prejudice based on a false representation of approval by opposing counsel.

"19.   For reasons unrelated to the matter now pending, the case was reassigned from Judge Roth to Judge Anthony Powell.

"20.   On September 27, 2004, Judge Powell conducted a hearing in the *City of Park City vs. City of Valley Center* to determine whether sanctions should be entered against the Respondent and/or the City of Park City for failing to comply with discovery orders.

"21. At that time, officials from the City of Park City appeared with the Respondent. Judge Powell questioned the officials from the City of Park City regarding their knowledge of the Respondent's disciplinary probation. The Respondent acknowledged that he had been placed on probation. The officials from the City of Park City informed the Court that they were aware that the Respondent had been placed on probation. The Respondent informed the Court that he was uncertain whether he remained on probation.

"22. The Respondent informed the Court that he had been unable to comply with the discovery orders because he had been suffering health problems. Judge Powell instructed the Respondent that if his health prevented him from adequately representing his client, he should withdraw from the representation.

"23. At the conclusion of the hearing, Judge Powell ordered the City of Park City to pay $1,200.00 in sanctions. Judge Powell took the request for attorney fees against the Respondent for failing to appear at one or more previous hearings under advisement. Judge Powell scheduled another hearing for Friday, October 1, 2004.

"24. On September 29, 2004, Chief Judge Richard T. Ballinger met with the Respondent, his supervising attorney, Mr. Shawver, and Michael Herd, the Chairman of the Service to the Bar Committee of the Wichita Bar Association, in his chambers to discuss the Respondent's practice.

"25. After learning of the meeting, Judge Powell entered Judge Ballinger's chambers and provided the Respondent with a supplemental order in the *City of Park City vs. City of Valley Center* case. The supplemental order directed the Respondent to appear in Judge Powell's court on October 1, 2004, as previously ordered. At that time, the Respondent informed Judge Powell that his health would not allow him to be present at the hearing. Judge Powell ordered the Respondent to appear in his court on October 1, 2004.

"26. Also on September 29, 2004, Judge Ballinger executed Administrative Order 04-4. Administrator Order 04-4 provides:

'Pursuant to Supreme Court Rule 221, this Court hereby appoints Michael D. Herd, Chairman of the Service to Bar Committee of the Wichita Bar Association, or his designees, to immediately take charge of those files and clients of Stan Singleton. The Court further finds due to medical reasons, those clients' interests are not being protected and to avoid further neglect of the clients, Michael D. Herd, or his designees, shall take control of those client files, inventory them, and take whatever action is necessary to protect the clients and their interests. Those attorneys who have been designated by Michael D. Herd shall have the same protection as if Michael D. Herd were personally handling the case, as provided for by the Supreme Court Rule 221. This Order shall remain in effect until further ordered.'

"27. The City of Park City retained new counsel.

"28. At 7:00 a.m. on October 1, 2004, the Respondent left a message for Judge Powell. The Respondent informed Judge Powell that he could not be present at the hearing because of his health problems.

"29. Several hearings were scheduled and rescheduled. The evidence does not indicate the resolution on the motion for attorney fees against Respondent; however, Judge Powell eventually held Respondent in contempt of court for failure to appear at the subsequently scheduled and rescheduled hearings in this suit.

"30. On October 6, 2004, the Kansas Supreme Court suspended the Respondent's license to practice law in the state of Kansas for failing to comply with the annual licensing requirements. Specifically, the Respondent failed to pay the annual registration, the Respondent failed to fulfill the minimum continuing legal education requirements, and the Respondent failed to pay the annual continuing legal education fee. The Respondent's license to practice law in Kansas remains suspended.

## "CONCLUSIONS OF LAW

"1. On March 7, 2004, the Kansas Supreme Court adopted Kan. Sup. Ct. R. 211(g). Kan. Sup. Ct. R. 211(g) establishes when probation should be recommended in a disciplinary case. Additionally, Kan. Sup. Ct. R. 211(g) addresses the procedure to undertake when an allegation surfaces that a Respondent may have violated one or more of the terms and conditions of probation. *See* Kan. Sup. Ct. R. 211(g).

"2. Although the 24-month period of time expired March 7, 2004, the Respondent remained on probation because the Supreme Court has not discharged the Respondent from probation. *See* Kan. Sup. Ct. R. 211(g)(8).

"3. After receiving 'other credible evidence,' pursuant to Kan. Sup. Ct. R. 211(g)(9), on January 4, 2005, the Disciplinary Administrator filed a motion to revoke the Respondent's probation.

"4. After hearing the testimony of the witnesses and reviewing the exhibits admitted, the Board Member finds by a preponderance of the evidence that the Respondent violated one or more of the terms and conditions of probation.

"5. Specifically, the Board Member concludes that the Respondent violated term number four of his probation. That term provides:

'*Additional Violations.* **The Respondent shall not violate the terms of his probation or the provisions of the Kansas Rules of Professional Conduct.** In the event that the Respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the Respondent shall immediately report such violation to the Disciplinary Administrator. The Disciplinary Administrator shall take immediate action directing the Respondent to show cause why the probation should not be revoked.' [Emphasis added.]

The Board Member concludes that the Respondent violated term number four when he violated KRPC 3.2, KRPC 3.3, KRPC 3.4, and KRPC 8.4.

"6. 'A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.' KRPC 3.2. In this case, the Respondent failed to make reasonable efforts to expedite litigation consistent with the interests of his client when he repeatedly failed to appear at scheduled hearings and when he

repeatedly failed to comply with requests and orders for discovery. As such, the Board Member concludes that the Respondent violated KRPC 3.2.

"7.  KRPC 3.3(a)(1) provides that '[a] lawyer shall not knowingly make a false statement of material fact or law to a tribunal.' The Respondent violated KRPC 3.3(a)(1) when he instructed his agent to prepare the Journal Entry of Dismissal Without Prejudice without signature blocks for opposing counsel and present that Journal Entry to the Court as an 'agreed to' order. These actions tricked Judge Woolley into executing the proposed order on the mistaken belief that it had been agreed to by opposing counsel. The Respondent also failed to inform Judge Woolley that there was an outstanding order compelling discovery in the case. Therefore, the Board Member concludes that the Respondent violated KRPC 3.3(a)(1).

"8.  'A lawyer shall not . . .  knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.' KRPC 3.4(a). The Respondent violated KRPC 3.4(a) when he knowingly disobeyed the Court's order to provide discovery. Additionally, the Respondent violated KRPC 3.4(a) when he knowingly failed to appear before Judge Powell on October 1, 2004. As such, the Hearing Panel concludes that the Respondent violated KRPC 3.4(a).

"9.  Lawyers are required to be fair to the opposing party and counsel. *See* KRPC 3.4(d). Specifically, '[a] lawyer shall not . . . in pretrial procedure, . . . fail to make [a] reasonably diligent effort to comply with a legally proper discovery request by an opposing party.' *Id.* In this case, the Respondent repeatedly failed to respond to requests for discovery in the *City of Park City vs. City of Valley Center* case. As such, the Hearing Panel concludes that the Respondent violated KRPC 3.4(d).

"10.  'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). 'It is [also] professional misconduct for a lawyer to . . .  engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The Respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation when he caused the Journal Entry of Dismissal to be presented to Judge Woolley in a manner which falsely represented it had been agreed to. This conduct also prejudiced the administration of justice. Accordingly, the Board Member concludes that the Respondent violated KRPC 8.4(c) and KRPC 8.4(d).

## "RECOMMENDATION

"The Disciplinary Administrator recommends that the Respondent's probation be revoked and that the Respondent be indefinitely suspended from the practice of law in the state of Kansas.

"The Board Member believes that the Respondent is suffering a debilitating and extended illness which has greatly affected the Respondent's ability to continue the practice of law and recognizes that this is a mitigating factor for consideration; however, the Respondent was aware of this illness and his inability to function adequately as a lawyer during the entire course of the Park City lawsuit.

It was incumbent upon Respondent to obtain the assistance of other counsel or to refer the matter to other counsel rather than continue to impede the progress of the suit and the administration of justice.

"After carefully considering the testimony, exhibits, and the recommendation of the Disciplinary Administrator, the Board Member recommends that the Court revoke the Respondent's probation and order that the Respondent's license to practice law be suspended for a period of one year. Additionally, the Board Member recommends that the Respondent be required to undergo a hearing pursuant to Kan. Sup. Ct. R. 219 to ensure that the Respondent is fit to practice law. The recommendation for suspension is independent of the administrative suspension Respondent is under currently because of his failure to comply with the annual licensing requirements."

The respondent filed a waiver of his right to file a response to the Board member's expedited report and further waived his right for oral argument before this court pursuant to Supreme Court Rule 211(g)(12) (2004 Kan. Ct. R. Annot. 275). The office of the Disciplinary Administrator waived its right to file a response pursuant to Supreme Court Rule 211(g)(12) and waives the right to oral argument.

The court, having considered the expedited hearing report, accepts and adopts the findings of fact and conclusions of law of the Board member. Those findings of fact establish by a preponderance of the evidence that respondent failed to comply with term number 4 of his probation by violating KRPC 3.2, 3.3, 3.4, and 8.4. After reviewing the record, the Disciplinary Administrator's recommendation, and considering the seriousness of the violation, the court concludes that indefinite suspension is the appropriate sanction.

IT IS THEREFORE ORDERED that the respondent, Stan R. Singleton, be and he is hereby indefinitely suspended from the practice of law in the state of Kansas effective the date of this order.

IT IS FURTHER ORDERED that the respondent shall forthwith comply with the provisions of Supreme Court Rule 218 (2004 Kan. Ct. R. Annot. 301).

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and the costs herein be assessed to the respondent.

DATED this 18th day of May, 2005.