No. 95,134

In the Matter of NANCY L. MOORE, *Respondent.*

(127 P.3d 270)

Opinion filed February 3, 2006.

*Frank D. Diehl,* deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett,* disciplinary administrator, was with him on the formal complaint for the petitioner.

No appearance by respondent.

*Per Curiam:* This is an original uncontested proceeding in discipline filed by the Disciplinary Administrator's office against the respondent, Nancy L. Moore, an attorney admitted to the practice of law in Kansas, alleging violations of Kansas Rules of Professional Conduct (KRPC) 1.3 (2005 Kan. Ct. R. Annot. 369) (diligence); 1.4(a) (2005 Kan. Ct. R. Annot. 383) (communication); 5.5 (2005 Kan. Ct. R. Annot. 488) (unauthorized practice of law); and 8.1(b) (2005 Kan. Ct. R. Annot. 499) (bar admission and disciplinary matters). Violations of Supreme Court Rule 207 (2005 Kan. Ct. R. Annot. 271) (duties of the bar and judiciary) and Rule 211(b) (2005 Kan. Ct. R. Annot. 287) (formal hearings) were also alleged. Respondent did not file a written answer to the complaint.

A hearing before the panel of the Kansas Board for Discipline of Attorneys was held on June 2, 2005, in Topeka, Kansas. Respondent failed to appear.

After hearing the testimony presented and the arguments of the Disciplinary Administrator, and after reviewing the exhibits admitted into evidence, the panel made the following findings of fact:

"1. . . . The Respondent was admitted to the practice of law in the state of Kansas on April 15, 1987.

"DA9098

"2. In 2003, the Respondent represented Robert Rupert in a criminal case in Montgomery County, Kansas. Later, in December, 2003, Mr. Rupert filed a complaint against the Respondent with the Disciplinary Administrator's office.

"3. On December 4, 2003, the Deputy Disciplinary Administrator sent a letter to the Respondent notifying her of Mr. Rupert's complaint and requesting that

she provide a written response within 15 days. The Respondent failed to provide the written response as requested.

"4. Because the Respondent did not respond to the December 4, 2003, letter, the Deputy Disciplinary Administrator docketed Mr. Rupert's complaint for investigation. On January 8, 2004, the Disciplinary Administrator sent a letter to the Respondent notifying her that Mr. Rupert's complaint had been docketed and requesting that the Respondent provide a written response to Mr. Rupert's complaint within 20 days. The Respondent failed to provide a written response as requested.

"5. John Gatz, Chairman of the Kansas Bar Association's Ethics and Grievance Committee appointed Jeffrey A. Chubb to investigate the complaint filed by Mr. Rupert. On January 16, 2004, Mr. Chubb wrote to the Respondent requesting that the Respondent provide a full and complete response to Mr. Rupert's complaint. The Respondent failed to respond to Mr. Rupert's complaint as requested.

"6. While Mr. Rupert's complaint was pending, Mr. Chubb learned that Zackery E. Reynolds had been appointed to investigate other disciplinary complaints. Mr. Chubb contacted Mr. Reynolds about how to contact the Respondent. They agreed to have a joint meeting in the event they were able to contact the Respondent.

"7. On June 1, 2004, the Respondent appeared in court before the Honorable Judd Dent. Following the court appearance, Judge Dent informed the Respondent that Mr. Chubb needed to meet with the Respondent regarding disciplinary complaints. Judge Dent directed the Respondent to go to Mr. Chubb's office.

"8. The Respondent went to Mr. Chubb's office. Mr. Chubb was available and [he] met with the Respondent regarding Mr. Rupert's complaint. However, the Respondent never provided a written response to Mr. Rupert's complaint.

"DA9099

"9. The Respondent represented David Richard in a post-conviction matter in Montgomery County, Kansas. On December 24, 2003, Mr. Richard filed a complaint against the Respondent.

"10. On January 8, 2004, the Deputy Disciplinary Administrator wrote to the Respondent, notified her of Mr. Richard's complaint, and requested that she provide a written response to the complaint within 20 days. The Respondent failed to provide a written response as requested.

"11. Mr. Gatz also appointed Mr. Chubb to investigate the complaint filed by Mr. Richard. On January 16, 2004, Mr. Chubb wrote to the Respondent requesting that the Respondent provide a full and complete response to Mr. Richard's complaint. The Respondent failed to respond to Mr. Richard's complaint as requested.

"12. While the Respondent was in Mr. Chubb's office on June 1, 2004, the Respondent and Mr. Chubb discussed the complaint filed by Mr. Richard. Again, the Respondent never provided a written response to Mr. Richard's complaint.

## "DA9109

"13.    The Respondent represented Stephen Dorman in a post-conviction matter. On November 29, 2003, Mr. Dorman filed a complaint against the Respondent. On December 10, 2003, the Disciplinary Administrator wrote to the Respondent, notified her that Mr. Dorman filed a complaint, and requested that the Respondent provide a written response to the complaint within 15 days. The Respondent failed to comply with the Disciplinary Administrator's request for a written response to the complaint.

"14.    Because the Respondent failed to provide a written response to the complaint, the Disciplinary Administrator docketed Mr. Dorman's complaint for investigation. On January 21, 2004, the Disciplinary Administrator again wrote to the Respondent, notified her that Mr. Dorman's complaint had been docketed for investigation, and requested that the Respondent provide a written response to the complaint. The Respondent failed to provide a written response to the complaint as requested by the Disciplinary Administrator.

"15.    Mr. Gatz appointed Mr. Reynolds to investigate Mr. Dorman's complaint. On March 31, 2004, Mr. Reynolds wrote to the Respondent requesting that she contact Mr. Reynolds to make arrangements for a meeting to discuss the pending disciplinary complaints. The Respondent never contacted Mr. Reynolds.

"16.    Mr. Reynolds called the Respondent by telephone several times. Mr. Reynolds was unable to reach the Respondent. The Respondent failed to return Mr. Reynolds' telephone calls.

"17.    While the Respondent was in Mr. Chubb's office, on June 1, 2004, Mr. Chubb called Mr. Reynolds. At that time, the Respondent and Mr. Reynolds discussed the complaint filed by Mr. Dorman. Mr. Reynolds requested that the Respondent provide Mr. Reynolds with documentation. The Respondent failed to provide the requested documentation. On July 20, 2004, Mr. Reynolds wrote to the Respondent and, again, asked her to provide documentation regarding the Respondent's representation of Mr. Dorman. The Respondent never responded to Mr. Reynolds July 20, 2004, letter and never provided a written response to Mr. Dorman's complaint.

## "DA9150

"18.    The Respondent represented Farlando McCarrell in three criminal cases. In early 2004, Mr. McCarrell filed a complaint against the Respondent with the Disciplinary Administrator's office. On February 26, 2004, the Deputy Disciplinary Administrator wrote to the Respondent, notified her of Mr. McCarrell's complaint, informed her that Mr. McCarrell's complaint had been docketed, and requested that the Respondent provide a written response to the complaint. The Respondent failed to provide a written response to the complaint as requested.

"19.    Mr. Gatz appointed Mr. Reynolds to investigate Mr. McCarrell's complaint. On March 31, 2004, Mr. Reynolds wrote to the Respondent requesting that she contact him to make arrangements for a meeting to discuss the pending disciplinary complaints. The Respondent never contacted Mr. Reynolds.

"20.  Mr. Reynolds called the Respondent by telephone several times to discuss Mr. McCarrell's complaint. Mr. Reynolds was unable to contact the Respondent. The Respondent failed to return Mr. Reynolds' telephone calls.

"21.  While the Respondent was in Mr. Chubb's office, on June 1, 2004, Mr. Chubb called Mr. Reynolds. At that time, the Respondent and Mr. Reynolds discussed the complaint filed by Mr. McCarrell. The Respondent never provided a written response to Mr. McCarrell's complaint.

## "DA9174

"22.  Patrick and Angela Hugo owned a business, Kitchen Gallery, LLC, which manufactured kitchen cabinets. The Hugos were in substantial financial difficulty and Mr. Hugo faced potential criminal prosecution for taking payments for cabinets and not filling the cabinet orders.

"23.  In May, 2003, Mr. and Mrs. Hugo retained the Respondent. The Respondent was retained to advise Mr. and Mrs. Hugo regarding bankruptcy laws and file a bankruptcy case. Mr. and Mrs. Hugo wanted the Respondent to file a bankruptcy case immediately. The Respondent did not file the bankruptcy case immediately.

"24.  In August, 2003, the Respondent prepared a draft copy of bankruptcy pleadings. Mr. and Mrs. Hugo reviewed the draft, made some changes, and returned the documents to the Respondent. After receiving the documents from Mr. and Mrs. Hugo, the Respondent took no action to get Mr. and Mrs. Hugo's bankruptcy case filed.

"25.  Mr. and Mrs. Hugo continued to try to contact the Respondent regarding their bankruptcy and other matters that continued to arise. The Respondent did not respond to their written communication nor did she return their telephone calls.

"26.  On March 2, 2004, Mr. and Mrs. Hugo contacted Richard Medley regarding the difficulties they were having with the Respondent. On that date, Mr. Medley wrote to the Respondent demanding that she return the legal fee paid by Mr. and Mrs. Hugo and make their file available to him.

"27.  Also, on March 2, 2004, the Respondent finally filed a bankruptcy case on behalf of Mr. and Mrs. Hugo. The bankruptcy pleadings had been prepared many months previously. The clients' circumstances had changed. Respondent filed the bankruptcy case without updating the information contained in the schedules or review and signature by the clients. The pleadings the Respondent filed contained errors.

"28.  Additionally, on March 2, 2004, Mr. and Mrs. Hugo filed a complaint against the Respondent regarding her representation of them.

"29.  On March 3, 2004, the Respondent forwarded her file to Mr. Medley.

"30.  Mr. and Mrs. Hugo retained Mr. Medley to represent them in the bankruptcy case. Mr. Medley corrected the errors contained in the pleadings filed by the Respondent.

"31.   On March 15, 2004, the Deputy Disciplinary Administrator wrote to the Respondent, notified her of Mr. and Mrs. Hugo's complaint, informed her that Mr. and Mrs. Hugo's complaint had been docketed, and requested that the Respondent provide a written response to the complaint. The Respondent failed to provide a written response to the complaint as requested.

"32.   Mr. Gatz appointed Mr. Reynolds to investigate Mr. and Mrs. Hugo's complaint. On March 31, 2004, Mr. Reynolds wrote to the Respondent requesting that she contact Mr. Reynolds to make arrangements for a meeting to discuss the pending disciplinary complaints. The Respondent never contacted Mr. Reynolds.

"33.   Mr. Reynolds called the Respondent by telephone several times. Mr. Reynolds was unable to contact the Respondent. The Respondent failed to return Mr. Reynolds' telephone calls.

"34.   While the Respondent was in Mr. Chubb's office on June 1, 2004, Mr. Chubb called Mr. Reynolds. At that time, the Respondent and Mr. Reynolds discussed the complaint filed by Mr. and Mrs. Hugo. The Respondent never provided a written response to Mr. and Mrs. Hugo's complaint.

## "DA9199

"35.   The Respondent represented Ryan Johnson in relation to a criminal matter. On April 12, 2004, Mr. Johnson filed a complaint against the Respondent. On April 14, 2004, the Deputy Disciplinary Administrator wrote to the Respondent, notified her of Mr. Johnson's complaint, informed her that Mr. Johnson's complaint had been docketed, and requested that the Respondent provide a written response to the complaint within 20 days. The Respondent failed to provide a written response to Mr. Johnson's complaint as requested.

"36.   Mr. Gatz appointed Mr. Chubb to investigate Mr. Johnson's complaint lodged against the Respondent. While the Respondent was in Mr. Chubb's office on June 1, 2004, Mr. Chubb and the Respondent discussed Mr. Johnson's complaint. The Respondent never provided a written response to Mr. Johnson's complaint.

## "DA9370

"37.   On October 6, 2004, the Kansas Supreme Court issued an order suspending the Respondent from the practice of law in the state of Kansas for failing to pay her registration fee and for failing to pay the annual continuing legal education fee. To date, the Respondent's license to practice law in the state of Kansas remains suspended.

"38.   The Respondent appeared in court in behalf of clients after her license to practice law had been suspended. Specifically, the Respondent appeared in court in behalf of clients on October 7, 2004, October 13, 2004, October 27, 2004, and October 28, 2004.

"39.   On November 1, 2004, the Honorable Judd Dent of the 14th Judicial District personally informed the Respondent that her license to practice law had been suspended. On November 2, 2004, Judge Dent forwarded a complaint to

the Disciplinary Administrator's office, alleging that the Respondent practiced law after her license to do so had been suspended.

"40.   On November 12, 2004, the Disciplinary Administrator wrote to the Respondent, notified her of Judge Dent's complaint, informed her that Judge Dent's complaint had been docketed, and requested that the Respondent provide a written response to the complaint within 20 days. The Respondent failed to provide a written response to Judge Dent's complaint as requested.

"41.   David L. Wood, Special Investigator for the Disciplinary Administrator's office contacted the Respondent. On January 25, 2005, Mr. Wood met with the Respondent in a conference room at the public library in Coffeyville, Kansas. During the meeting, Mr. Wood informed the Respondent that she needed to provide a written response to the complaint filed by Judge Dent. The Respondent informed Mr. Wood that she did not have access to her computer. Mr. Wood suggested that the Respondent provide a handwritten response to Judge Dent's complaint. The Respondent agreed to provide a handwritten response to Judge Dent's complaint. The Respondent failed to provide a response to Judge Dent's complaint."

## The Panel made the following conclusions of law:

### "CONCLUSIONS OF LAW

"1.   Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.3, KRPC 1.4, KRPC 5.5, KRPC 8.1, Kan. Sup. Ct. R. 207(b), and Kan. Sup. Ct. R. 211(b) as detailed below.

"2.   Kan. Sup. Ct. R. 215 governs service of process in disciplinary proceedings. That rule provides, in pertinent part as follows:

'(a)   Service upon the respondent of the formal complaint in any disciplinary proceeding shall be made by the Disciplinary Administrator, either by personal service or by certified mail to the address shown on the attorney's most recent registration, or at his or her last known office address.

. . . .

'(c)   Service by mailing under subsection (a) or (b) shall be deemed complete upon mailing whether or not the same is actually received.'

In this case, the Disciplinary Administrator complied with Kan. Sup. Ct. R. 215(a) by sending a copy of the Formal Complaint and the Notice of Hearing, *via* certified United States mail, postage prepaid, to the address shown on the Respondent's most recent registration. Accordingly, the Hearing Panel concludes that the Respondent was afforded the notice that the Kansas Supreme Court Rules require.

"3.   Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. In this case, the Respondent failed to provide diligent representation to Mr. and Mrs. Hugo when she failed to timely file a bankruptcy case. The Kansas Rules of Professional Conduct prohibit an attorney from agreeing to provide representation and then fail to take any steps for an

extended period of time to complete the representation. Because the Respondent failed to act with reasonable diligence and promptness in representing Mr. and Mrs. Hugo, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"4. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when she failed to respond to Mr. and Mrs. Hugo's written communications and when she failed to return Mr. and Mrs. Hugo's telephone calls. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"5. The Kansas Rules of Professional Conduct provide that 'a lawyer shall not practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction.' KRPC 5.5(a). Even though the Respondent's license to practice law in Kansas was suspended, she continued to practice law by making court appearances in behalf of clients. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 5.5(a) when she appeared in court in behalf of clients following the October 6, 2004, suspension of her license to practice law.

"6. Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) provide the requirement in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority. . . .' KRPC 8.1[b].

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Kan. Sup. Ct. R. 207(b).

The Respondent knew that she was required to forward a written response to each of the complaints—she had been repeatedly instructed to do so in writing by the Disciplinary Administrator, the Deputy Disciplinary Administrator, Mr. Chubb, and Mr. Reynolds. Finally, the Respondent was personally instructed to provide a written response to Judge Dent's complaint by Mr. Wood. Because the Respondent knowingly failed to provide a written response to the complaints filed by Mr. Rupert, Mr. Richard, Mr. Dorman, Mr. McCarrell, Mr. and Mrs. Hugo, Mr. Johnson, and Judge Dent, as requested by the Disciplinary Administrator, the Deputy Disciplinary Administrator, Mr. Chubb, Mr. Reynolds, and Mr. Wood, the Hearing Panel concludes that the Respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b).

"7. Kan. Sup. Ct. R. 211(b) provides, in pertinent part:
'The respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

In this case, the Respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a written Answer to the Formal Complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b).

"8.    While the Deputy Disciplinary Administrator submitted some evidence that the Respondent violated KRPC 1.1, KRPC 1.5, and KRPC 8.4(c), the evidence did not amount to clear and convincing evidence. Accordingly, the Hearing Panel dismisses the allegations that the Respondent violated KRPC 1.1, KRPC 1.5, and KRPC 8.4(c)."

In making its recommendation for discipline, the Hearing Panel considered the following factors as outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions.

"*Duty Violated.* The Respondent violated her duty to her clients to provide diligent representation and adequate communication. Further, the Respondent violated her duty to the legal profession to cooperate in disciplinary investigations.

"*Mental State.* The Respondent knowingly violated her duties.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual harm to the legal profession and to Mr. and Mrs. Hugo.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"A Pattern of Misconduct. Included in this case are seven complaints. In each case, the Respondent failed to cooperate in the disciplinary investigation. As such, the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 1.3, KRPC 1.4, KRPC 5.5, KRPC 8.1, Kan. Sup. Ct. R. 207(b), and Kan. Sup. Ct. R. 211(b). As such, the Respondent committed multiple offenses.

"Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process. The Respondent knew that she was required to provide written responses to the complaints filed by Mr. Rupert, Mr. Richard, Mr. Dorman, Mr. McCarrell, Mr. and Mrs. Hugo, Mr. Johnson, and Judge Dent. The Respondent never filed such responses. The Hearing Panel, therefore, concludes that the Respondent obstructed the disciplinary proceeding.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1987. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of 16 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time she engaged in the misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommen-

dation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Personal or Emotional Problems if Such Misfortunes have Contributed to a Violation of the Kansas Rules of Professional Conduct. From the testimony, it appears that the Respondent suffers from alcohol abuse.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.' Standard 4.42.

'Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.' Standard 7.2."

The hearing panel unanimously recommends that Respondent be indefinitely suspended from the practice of law. The hearing panel further recommends that respondent undergo a complete drug and alcohol evaluation and comply with all recommendations for treatment as a condition to reinstatement. The Deputy Disciplinary Administrator recommends that the respondent be disbarred.

The respondent filed no exceptions to the panel's report, and having been notified of these proceedings, failed to appear at the time of scheduled oral argument. This failure to appear constitutes a violation of Supreme Court Rule 212(d) (2005 Kan. Ct. R. Annot. 297).

We conclude the panel's findings are established by clear and convincing evidence, and adopt the panel's conclusions of law. A majority of the court agrees with the panel's recommendation that respondent be indefinitely suspended. A minority of the court would disbar the respondent.

IT IS THEREFORE ORDERED that respondent Nancy L. Moore be and she is hereby indefinitely suspended from the practice of law in the state of Kansas in accordance with Supreme Court Rule

203(a)(2) (2005 Kan. Ct. R. Annot. 247) for her violations of the KRPC and Supreme Court Rules.

IT IS FURTHER ORDERED that Nancy L. Moore shall comply with Supreme Court Rule 218 (2005 Kan. Ct. R. Annot. 315), that the costs of this action be assessed to respondent, and that this order be published in the official Kansas Reports.